UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
HARRY BASS and MARIA BASS,                      :
                                                :
                          Plaintiffs,           :
                                                :
         -against-                              :
                                                :       **FIRST AMENDED**
THE CITY OF NEW YORK; JESSICA                   :       **COMPLAINT**
HERNANDEZ; NICHOLAS NELSON;                     :
PAVEL MASHKOV; FRANK TORNABENE;                 :       **Jury Trial Demanded**
and JOHN/JANE DOES, Nos. 1-10 (members          :
of the New York City Police Department whose    :       **ECF Case**
names are presently unknown to plaintiffs),     :
                                                :       14 Civ. 7201 (JBW)(VVP)
                          Defendants.           :
------------------------------------------------------------------x

Plaintiffs HARRY BASS and MARIA BASS, by their attorney, Robert T. Perry, respectfully alleges as follows:

## NATURE OF ACTION

1. Plaintiffs bring this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of their civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs also assert supplemental claims under New York law.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

3. The Court has jurisdiction over plaintiffs' federal law claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. The Court has jurisdiction over plaintiffs' supplemental state law claims under 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to plaintiffs' claims occurred in this district.

## JURY DEMAND

6. Plaintiffs respectfully demand trial by jury of all issues properly triable thereby pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. Plaintiffs HARRY BASS and MARIA BASS are residents of Brooklyn, New York. Plaintiffs are husband and wife.

8. Defendant THE CITY OF NEW YORK ("the City") is, and was at all times relevant herein, a municipal corporation duly organized and existing under the laws of the State of New York. The City maintains the New York City Police Department ("NYPD"), which acts as the City's agent in the area of law enforcement and for which the City is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

9. Defendant JESSICA HERNANDEZ (Shield No. 25513) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of

the NYPD. During the relevant times herein, defendant Hernandez was a police officer assigned to the 62nd Precinct in Brooklyn, New York. Defendant Hernandez is being sued in her individual capacity.

10. Defendant NICHOLAS NELSON (Shield No. 15798) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Nelson was a police officer assigned to the 62nd Precinct in Brooklyn, New York. Defendant Nelson is being sued in his individual capacity.

11. Defendant PAVEL MASHKOV (Shield No. 10242) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Mashkov was a police officer assigned to the 62nd Precinct in Brooklyn, New York. Defendant Mashkov is being sued in his individual capacity.

12. Defendant FRANK TORNABENE (Shield No. 08205) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Tornabene was a police officer assigned to the 62nd Precinct in Brooklyn, New York. Defendant Tornabene is being sued in his individual capacity.

13. All "John Doe" and "Jane Doe" defendants are, and were at all relevant times herein, duly appointed agents, employees, officers, and servants of the NYPD. The Doe defendants are being sued in their individual capacities.

14. At all relevant times herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers, and servants of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties. At all relevant times herein, the individual defendants were acting for and on behalf of the NYPD, with the power and authority vested in them as agents, employees, officers, and servants of the NYPD.

15. At all relevant times herein, the individual defendants acted jointly and in concert with each other. Each individual defendant had the duty and the opportunity to protect plaintiffs from the unlawful actions of the other individual defendants but each individual defendant failed and refused to perform such duty, thereby proximately causing plaintiffs' injuries.

## STATEMENT OF FACTS

16. On Saturday, September 14, 2013, plaintiff Harry Bass drove from his home to the 7-Eleven store at West 8th Street and Avenue U in Brooklyn, New York to buy several items, including beer, milk, and cigarettes.

17. Plaintiff Maria Bass accompanied her husband, plaintiff Harry Bass, in the car, sitting in the front passenger seat.

18. From time to time, plaintiffs have shopped at the 7-Eleven store at West 8th Street and Avenue U, because the store is close to their home.

19. Plaintiff Harry Bass arrived at West 8th Street and Avenue U between 9:00 and 10:00 p.m., on Saturday, September 14, 2013, stopping the car in front of the 7-Eleven store.

20. As plaintiff Maria Bass waited in the car, plaintiff Harry Bass entered the 7-Eleven store to make his purchases.

21. As soon as plaintiff Harry Bass entered the 7-Eleven store, a store employee loudly remarked to another store employee, in sum and substance, "Here's the guy with the spic wife who has a big ass."

22. Plaintiff Harry Bass began to argue with the 7-Eleven store employee who had made the inappropriate, racially disparaging remark about plaintiff Maria Bass.

23. The 7-Eleven store employee told plaintiff Harry Bass to leave the 7-Eleven store.

24. Plaintiff Harry Bass refused to leave the 7-Eleven store, as he had done nothing wrong.

25. The store employee called 911.

26. A few minutes later, as plaintiff Harry Bass stood at the counter paying for the items that he was purchasing, defendant Nelson, accompanied by two police officers in plain clothes, entered the 7-Eleven store.

27. A minute or so later, defendant Hernandez also entered the 7-Eleven store.

28. Without saying a word to plaintiff Harry Bass, defendant Nelson, assisted by the officers in plain clothes, took plaintiff Harry Bass into custody, handcuffing him behind his back.

29. Once plaintiff Harry Bass was handcuffed, the officers in plain clothes left the 7-Eleven store.

30. Noticing uniformed police officers entering the 7-Eleven store, plaintiff Maria Bass became concerned about her husband's safety.

31. Plaintiff Maria Bass got out of the car and ran into the 7-Eleven store.

32. Upon entering the 7-Eleven store and seeing her husband in handcuffs, plaintiff Maria Bass asked, in sum and substance, "What's going on?"

33. Defendant Hernandez told plaintiff Maria Bass to step outside.

34. Plaintiff Maria Bass said "okay," complied with defendant Hernandez's command, and stepped outside the 7-Eleven store.

35. As plaintiff Maria Bass stepped outside the 7-Eleven store, defendant Hernandez kicked plaintiff Maria Bass in the lower back from behind.

36. Plaintiff Maria Bass did nothing to provoke the assault and offered no physical resistance.

37. Plaintiff Maria Bass fell face first to the ground, injuring her right knee, left elbow and shoulder, right hip, and lower back.

38. As plaintiff Maria Bass lay face first on the ground, defendant Hernandez handcuffed plaintiff Maria Bass behind her back.

39. Shocked by the unprovoked assault and in great pain, plaintiff Maria Bass called defendant Hernandez a "fucking cunt."

40. Defendant Hernandez then tightened the handcuffs on plaintiff Maria Bass and kicked her left side.

41. As defendant Hernandez handcuffed plaintiff Maria Bass, defendant Nelson brought plaintiff Harry Bass out of the 7-Eleven store.

42. Outside the 7-Eleven store, defendant Nelson struck plaintiff Harry Bass with a karate-chop behind his left shoulder, injuring the shoulder.

43. Plaintiff Harry Bass did nothing to provoke the assault and offered no physical resistance.

44. Plaintiff Harry Bass fell to his knees.

45. Defendant Hernandez next said to plaintiff Maria Bass, in sum and substance, "get up bitch."

46. Plaintiff Maria Bass replied, in sum and substance, that she could not get up because she was handcuffed behind her back.

47. Defendant Hernandez then kicked plaintiff Maria Bass again on the left side.

48. Defendant Hernandez next repeated her command to plaintiff Maria Bass to "get up bitch," adding that she was not going to say it again.

49. Maria Bass again replied that she could not get up because she was handcuffed behind her back.

50. Defendant Nelson then came over to plaintiff Maria Bass, grabbed her breasts from behind, and picked her up off the ground.

51. Even though she stood only a few feet away, defendant Hernandez did nothing to prevent defendant Nelson from groping plaintiff Maria Bass.

52. Defendants Mashkov and Tornabene were present during defendants Hernandez's and Nelson's assault on plaintiffs, could have intervened to prevent the assault, but failed to do so.

53. Defendant Nelson next searched plaintiffs' car without plaintiffs' consent, finding and seizing a canister of mace which plaintiff Harry Bass, a former corrections officer, was legally permitted to possess.

54. An ambulance then arrived.

55. Defendant Nelson ordered plaintiffs into the ambulance, and plaintiffs complied with the order.

56. Plaintiffs were taken to Lutheran Medical Center, accompanied by defendant Nelson in the ambulance.

57. Defendant Hernandez followed in a marked police car.

58. En route to Lutheran Medical Center, defendant Nelson pointed the canister of mace in plaintiff Harry Bass's face, threatening to spray him, until defendant Nelson realized that an emergency medical technician was watching.

59. En route to Lutheran Medical Center, defendant Nelson removed plaintiff Maria Bass's handcuffs.

60. Upon arrival at Lutheran Medical Center, defendant Nelson removed plaintiff Harry Bass's handcuffs.

61. Defendant Nelson told hospital staff at Lutheran Medical Center that plaintiff Harry Bass was intoxicated, which was not true.

62. Defendant Nelson also told a hospital staff member and a security guard at Lutheran Medical Center not to let plaintiffs leave.

63. Defendants Hernandez and Nelson then left the Lutheran Medical Center without issuing plaintiffs any summonses or desk appearance tickets.

64. No charges were ever filed against plaintiffs in connection with the September 14, 2013 incident.

65. Shortly after midnight on Sunday, September 15, 2013, hospital staff released plaintiffs, noting that plaintiff Harry Bass appeared to be clinically sober.

66. As a result of the September 14, 2013 incident, plaintiffs sustained, *inter alia*, physical injuries, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of liberty, physical restraints, and violation of their constitutional rights.

67. Plaintiff Harry Bass still cannot lift his left arm above his shoulder without pain and has great difficulty sleeping through the night because of the continuing shoulder pain.

68. Plaintiff Maria Bass cannot lift her left arm above her head, cannot carry heavy items, and cannot walk her dogs.

69.     Plaintiff Maria Bass had difficulty sleeping for three weeks after the September 14, 2013 incident.

70.     Plaintiff Maria Bass has a permanent scar on her right knee.

### FIRST CLAIM FOR RELIEF

### (False Arrest Claim Under 42 U.S.C. § 1983)

71.     Plaintiffs repeat and reallege paragraphs "1" through "70" with the same force and effect as if they were fully set forth herein.

72.     Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiffs to be imprisoned without probable cause to believe that plaintiffs had committed any crime or offense, in violation of each plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

### SECOND CLAIM FOR RELIEF

### (Excessive Force Claim Under 42 U.S.C. § 1983)

73.     Plaintiffs repeat and reallege paragraphs "1" through "72" with the same force and effect as if they were fully set forth herein.

74.     Defendants, acting in concert and within the scope of their authority, used objectively unreasonable force in arresting plaintiffs, in violation of each plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM FOR RELIEF

### (Unlawful Search Claim Under 42 U.S.C. § 1983)

75. Plaintiffs repeat and reallege paragraphs "1" through "74" with the same force and effect as if they were fully set forth herein.

76. Defendants, acting in concert and within the scope of their authority, conducted a search of plaintiffs' car without probable cause, privilege or consent, in violation of each plaintiff's right to be free from unreasonable search under the Fourth and Fourteenth Amendments to the United States Constitution.

## FOURTH CLAIM FOR RELIEF

### (Failure to Intervene Claim Under 42 U.S.C. § 1983)

77. Plaintiffs repeat and reallege paragraphs "1" through "76" with the same force and effect as if they were fully set forth herein.

78. Each individual defendant had an affirmative duty to intervene on behalf of plaintiffs, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, in violation of each plaintiff's right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## FIFTH CLAIM FOR RELIEF

### (Municipal Liability Claim Under 42 U.S.C. § 1983)

79. Plaintiffs repeat and reallege paragraphs "1" through "78" with the same force and effect as if they were fully set forth herein.

11

80. The individual defendants, singly and collectively, while acting under color of state law, engaged in conduct that constituted customs, policies, practices, procedures, rules, or usages of the City and the NYPD forbidden by the Constitution of the United States.

81. The foregoing customs, policies, practices, procedures, rules, and usages include, but are not limited to, making arrests without probable cause and using excessive force.

82. The existence of the foregoing customs, policies, procedures, rules, and usages may be inferred from repeated occurrences of similar wrongful conduct, as documented in recent civil rights actions filed against the City, including, but not limited to:

    (1) **Angel Bonilla v. City of New York**, United States District Court, Eastern District of New York, 12 CV 3368 (JBW) (police officers arrested 53-year-old disabled man inside 83rd Precinct in Brooklyn, where he had gone to ask about granddaughter, and falsely reported that he had trespassed in an apartment building blocks away; excessive force);

    (2) **Ciara Caraballo v. City of New York**, United States District Court, Southern District of New York, 11 CV 8917 (JSR) (police officers arrested three individuals in front of 1862 Lexington Avenue in Manhattan on false charges, including assault in the second degree on police officer; excessive force; all charges later dismissed; Civilian Complaint Review Board found that officers lacked probable cause to arrest);

    (3) **Michael Hemphill v. City of New York**, United States District Court, Southern District of New York, 11 CV 2160 (AKH) (police officers arrested individual in East Harlem on false charges, including obstructing governmental administration in second degree; excessive force);

(4) **Shelly Levy v. City of New York**, United States District Court, Southern District of New York, 11 CV 0227 (DLC) (police officers arrested individual in Chelsea area on false charges of resisting arrest and disorderly conduct; excessive force);

(5) **Casimiro Medina v. City of New York**, United States District Court, Eastern District of New York, 10 CV 3158 (NGG) (police officers arrested individual in Brooklyn on false drug possession charges; excessive force; decline to prosecute); and

(6) **Francisco Baez v. City of New York**, United States District Court, Southern District of New York, 08 CV 10604 (PKC) (police officers arrested 16-year-old near Union Square on false charges, including murder in second degree; officers coerced false confession from 16-year-old; lead detective stated in report that witness positively identified 16-year-old, when, in fact, witness did not; all charges later dismissed).

83. In denying the City's motion to dismiss a municipal liability claim in *Colon v. City of New York*, No. 09 Civ. 8 (JBW), 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009), the Honorable Jack B. Weinstein, United States District Judge, observed:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department, there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

*Id.* at *2.

84. Seemingly acknowledging the problem, then New York City Police Commissioner Raymond E. Kelly stated, "When it happens, it's not for personal gain. It's more for convenience." Christine Hauser, *Few Results for Reports of Police Misconduct*, N.Y. Times, Oct. 5, 2009, at A19.

13

85. Between 2005 and 2009, the NYPD refused to prosecute 40% of the cases referred by the Civilian Complaint Review Board ("CCRB") for prosecution. Christine Hauser, *Few Results for Reports of Police Misconduct*, N.Y. Times, Oct. 5, 2009, at A19. And only 25% of the cases found substantiated by the CCRB resulted in NYPD discipline more severe than verbal instructions. *Id.*

86. The City has inadequately screened, hired, retained, trained, and supervised its employees, including the individual defendants herein, to respect the constitutional rights of those individuals with whom NYPD police officers come in contact.

87. Indeed, on information and belief, in December 2013, officers from the 62nd Precinct visited the home of another individual whom defendant Nelson had assaulted in defendant Hernandez's presence and apologized for defendant Nelson's behavior, acknowledging that defendant Nelson required more training.

88. The foregoing customs, policies, practices, procedures, rules, and usages constituted deliberate indifference to plaintiffs' safety, well-being, and constitutional rights.

89. The foregoing customs, policies, practices, procedures, rules, or usages were the direct and proximate cause of the constitutional violations suffered by plaintiffs.

90. The foregoing customs, policies, practices, procedures, rules, or usages were the moving force behind the constitutional violations suffered by plaintiffs.

## Supplemental State Law Claims

91.     Plaintiffs repeat and reallege paragraphs "1" through "90" with the same force and effect as if they were fully set forth herein.

92.     Within ninety (90) days after plaintiffs' claims herein arose, plaintiffs duly served upon, presented to, and filed with the City of New York Notices of Claim setting forth all facts and information required under New York General Municipal Law § 50-e.

93.     More than thirty (30) days have elapsed since the presentation of plaintiffs' claims to the City of New York.  The City of New York has wholly neglected or refused to make an adjustment or payment thereof.

94.     This action was commenced within one (1) year and ninety (90) days after the claims accrued.

95.     Plaintiffs have complied with all conditions precedent to maintaining the instant action.

## SIXTH CLAIM FOR RELIEF

### (False Arrest Under New York Law)

96.     Plaintiffs repeat and reallege paragraphs "1" through "95" with the same force and effect as if they were fully set forth herein.

97.     Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiffs to be imprisoned without probable cause to believe that plaintiffs had committed any crime or offense, and without any warrant or authority to do so.

15

## SEVENTH CLAIM FOR RELIEF

### (Assault Under New York Law)

98. Plaintiffs repeat and reallege paragraphs "1" through "97" with the same force and effect as if they were fully set forth herein.

99. Defendants, acting in concert and within the scope of their authority, placed plaintiffs in apprehension of imminent harmful and offensive bodily contact.

## EIGHTH CLAIM FOR RELIEF

### (Battery Under New York Law)

100. Plaintiffs repeat and reallege paragraphs "1" through "99" with the same force and effect as if they were fully set forth herein.

101. Defendants, acting in concert and within the scope of their authority, made offensive contact with plaintiffs without privilege or consent.

## NINTH CLAIM FOR RELIEF

### (Unlawful Search Claim Under New York Law)

102. Plaintiffs repeat and reallege paragraphs "1" through "101" with the same force and effect as if they were fully set forth herein.

103. Defendants, acting in concert and within the scope of their authority, conducted a search of plaintiffs' car without probable cause, privilege or consent, in violation of each plaintiff's right to be free from unreasonable search under Article 1, Section 12 of the New York State Constitution.

## TENTH CLAIM FOR RELIEF

### (*Respondeat Superior* Liability Under New York Law)

104. Plaintiffs repeat and reallege paragraphs "1" through "103" with the same force and effect as if they were fully set forth herein.

105. The City is vicariously liable for the acts of their employees and agents who were on duty and acting in the scope of their employment when they engaged in the above unlawful conduct.

## ELEVENTH CLAIM FOR RELIEF

### (Negligent Screening, Hiring, and Retention Under New York Law)

106. Plaintiffs repeat and reallege paragraphs 1 through "105" with the same force and effect as if they were fully set forth herein.

107. The City failed to use reasonable care in the screening, hiring, and retention of the NYPD employees who participated in the above unlawful conduct.

## TWELFTH CLAIM FOR RELIEF

### (Negligent Training and Supervision Under New York Law)

108. Plaintiffs repeat and reallege paragraphs 1 through "107" with the same force and effect as if they were fully set forth herein.

109. The City failed to use reasonable care in the training and supervision of the NYPD employees who participated in the above unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand the following relief jointly and severally against all the defendants:

 (A) Compensatory damages in an amount to be determined at trial;

 (B) Punitive damages in an amount to be determined at trial;

 (C) Reasonable attorney's fees and costs of this litigation; and

 (D) Such other relief as this Court deems just and proper.

Dated: Brooklyn, New York
   May 11, 2015

             Respectfully submitted,

             */s/ Robert T. Perry*
             ROBERT T. PERRY (RP-1199)
             45 Main Street, Suite 230
             Brooklyn, New York 11201
             (212) 219-9410
             *Attorney for Plaintiffs*

TO: <u>BY ECF AND FIRST CLASS MAIL</u>
   Noreen Stackhouse, Esq.
   Assistant Corporation Counsel
   *Attorney for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HARRY BASS and MARIA BASS,

                        Plaintiffs,

    -against-

THE CITY OF NEW YORK; JESSICA                     14 Civ. 7201 (JBW)(VVP)
HERNANDEZ; NICHOLAS NELSON;
PAVEL MASHKOV; FRANK TORNABENE;
and JOHN/JANE DOES, Nos. 1-10 (members
of the New York City Police Department whose
names are presently unknown to plaintiffs),

                        Defendants.
-------------------------------------------------------------------x

# FIRST AMENDED COMPLAINT

ROBERT T. PERRY
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
*Attorney for Plaintiffs*